Thank you and good morning. We're ready to hear argument in our next case, Harrell v. Freedom Mortgage. Mr. Harrell, I believe you're up first. Yes, Your Honor. May it please the Court. My name is Rod Harrell. I represent the Plaintiff Appellant in this case. The District Court erred as a matter of law by failing to follow a Supreme Court precedent and by making a determination of the Real Estate Settlement Procedures Act that was incorrect. The District Court interpreted a provision of servicing to mean that there would be two servicers at the same time. Harrell alleged that servicing had transferred on November 1, 2017 from NYCB to Freedom Mortgage. Nonetheless, the District Court held that NYCB would be his servicer for the narrow purpose of making a property tax… I'm sorry, Mr. Harrell. So you bring up NYCB. Is NYCB a necessary party in your view? Your Honor, NYCB is not a necessary party in my view. And just very briefly to say why, if we look at the provisions of 19A, of course 19B is not relevant here because we know we could join NYCB. But if we look at 19A, we know they can be joined. So 19A1 is not a problem. So the question is, if that party can be joined, in NYCB's absence, can the court accord complete relief among the existing parties under 19A1A? And of course the answer is yes. If Harrell wins against Freedom, Freedom will compensate Harrell completely. If Harrell loses, Harrell has to sue another party. I suspect A1A was not really what the court was going after here. The really meat of this issue is 19A1B. That person must claim an interest relating to the subject of the action and be so situated that disposing of the action in the person's absence affect one of the two following provisions. Now, if this provision, the person claiming an interest, is to have any force and effect, and this court hasn't specifically held that a putative required party must make an affirmative claim, but if there is any situation where a person has to make an actual claim, an affirmative act, this would be the situation. We know that NYCB, as a sophisticated party, they know about this case. We have physical documentation that shows they are aware this case is going on. They know that it affects them, and yet they have made no effort whatsoever. Counsel, I understand that argument. It's just inconsistent with a lot of Supreme Court precedent. Assume, just for a second, that that argument, that you require an affirmative statement or affirmative claim by the potential party, is foreclosed by a number of Supreme Court cases. Tell me the next argument. I just don't want you to waste all your time on that issue. Roger, I understand that. Okay, so if we assume that they don't have to actually make an affirmative claim, then we'll go to B1. Okay, so assuming that they have somehow indicated an interest, and we have to look at the next segment. As a practical matter, does their absence impair or impede their ability to protect the interest? The answer is no. As a practical matter, these words are very important. As a practical matter, either Harold will sue NYCB eventually and recover from NYCB under the statute, or Harold succeeds in this case, recovers from Freedom, and Freedom then exercises its indemnification clause under contract and recovers from NYCB as a matter of contract. As a practical matter, it doesn't make any difference to NYCB. They are indifferent, and their indifference is shown by the fact that they've made no effort whatsoever to inject themselves into the case. Neither party, even though the plaintiff and the defendant both agree that NYCB could be joined, have not attempted to join them, and NYCB hasn't made any effort to try to be joined. So then let's look at B1.2. Is their absence, will it leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest? Well, I've already explained that the interest is small to negligent, if nothing. And for an absent party to leave an existing party subject to a substantial risk, their presence would have to actually do something. And NYCB has nothing to add in this case. This is purely about statutory interpretation. We do not care. We are not concerned about the terms of the PAA in every situation. Yes, Your Honor. And in particular, if you are right, if you prevail, they really have nothing to add. Is that right? That's correct, Your Honor, especially in that situation. All right, so considering that they are not required, we'll just look at what did the district court actually determine in this case. They determined as a matter of law that there would be a requirement for there to be two servicers, two servicers at the same time. Harrell alleged that the servicer, there was a violation of 6G. Sorry, this feedback is killing me. But under 6G, the servicer shall make payments from the escrow account for such taxes any timely manner as such payments become due. So clearly, the servicer has an obligation under statute. Who is the servicer? The district court looked at the definition of servicer. Servicer is a defined term. A servicer is a person responsible for servicing of a loan. Now, that might have been enough right there because Harrell alleged that servicing transferred. You might think the person to whom servicing transferred is responsible for servicing and is thus the servicer. The district court continued, person responsible for servicing. Servicing is also a defined term. In relevant part, servicing is receiving any scheduled periodic payments and making payments with respect to the amounts received from the borrower. Now, that bottom section, that's what the court interpreted to require there to be two servicers. Here's exactly how it did that. The court said that Harrell had made all the payments from which his property tax payment would be made before October 31st. All those monies had come to NYCB. For that purpose, for that reason, NYCB was the responsible party because it was responsible for making payments with respect to the amounts received from the borrower. Now, it interpreted a provision of law to come to that conclusion. Here's why that's so important. Here's what it means. I think the easiest way to understand is to follow the money. Harrell made a series of scheduled periodic payments to NYCB. NYCB received those scheduled periodic payments. An obligation attached at the time it received those scheduled periodic payments and stayed with NYCB. This is what the district court is thinking here. NYCB puts the money into the escrow account. It then transfers that money to Freedom. It then transfers the escrow account with the monies to Freedom. Now, what is Freedom responsible for under the district court's interpretation? Freedom is responsible for making payments with respect to the amounts received from the borrower, but that only means with respect to the amounts that it, Freedom, received from the borrower. It is not responsible for all of that money that has sitting in its escrow account right by its side on November 15th. It's not responsible for those monies because the district court says NYCB is still responsible as a matter of law. There is this continuing residual responsibility that exists from NYCB. This is inconsistent with RESPA, and making that interpretation, the district court did that without consideration of proper Supreme Court precedent. Robinson v. Shell Oil Company makes it very clear that we are to, when we interpret a provision of law, a disputed provision of statute, we must look at the language itself, the specific context in which the terms are used, and then the broader context of the statute. All context of the statute points against this idea that there could be two servicers at the same time. If we do a Robinson-compliant interpretation, we find something different. Let's start by looking at the plain terms. Consider this look at the statutory context is required before we can even determine whether that provision is plain or ambiguous. Context must be looked at in every situation. Let's look at the plain terms with respect to the amounts received from the borrower. Understand, again, the district court understood that to mean those specific scheduled periodic payments only that come directly from the borrower. That's not the plain language. Amounts received from the borrower means all amounts received from the borrower. That's the natural reading.  The answer is yes, because in servicing, receiving scheduled periodic payments, that's different from making payments with respect to amounts received. Amounts received, scheduled periodic payments, these are two separate words meaning two different things. If we read amounts received from the borrower to mean all amounts, then we have read it to mean something different. We are reading it consistently. We also need to look at the broader context, and this is important. We look at 6G. How does that interpretation with respect to the amounts received, that means all amounts, how does that line up with Section 6G? There's a lot in 6G that leads us to the conclusion there can only be one servicer, and that servicer is freedom. If we read this here. If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, the servicer shall make payments from the escrow account for such taxes in a timely manner as such payments become due. So we can see Section 6G seems to align the party that is responsible for putting money into the escrow account to the party that takes money out of the escrow account, the same party. And then it links further, it links to the party making payments as such payments become due. This is all the same party, and that interpretation, what 6G drives, the 6G driver, that's consistent with the interpretation with respect to the amounts received from the borrower, that means all amounts. And if we look back, it's even more important than that, because when we look at the middle part here of Section 6G, the servicer shall make payments from the escrow account for such taxes as such payments become due, as the 15th of November payments become due on November 15th. This ties that party to the party presently, who is presently the servicer. That servicer shall make payments from the escrow account. If we agree with the district court's interpretation, that is inconsistent with this phrase. The servicer has to make payments from the escrow account, but not under the district court's interpretation, because there are some monies in that escrow account that it is not responsible for. That interpretation cannot stand. And I'm sorry, my video is frozen, so I'm not sure how much time I have left, but I just want to – You have one minute. Okay, thanks very much. I just want to wrap up by saying all the interpretations that support the idea that there is a need to be two servicers, and, in fact, the district court's interpretation essentially requires that in every situation, in every transfer, there will be two servicers as a matter of statute. That escrow account will always have some funds in it from a transferor. That is not consistent with what the borrower understands. This is a consumer protection statute. It's important to understand what's the point of view of the borrower. What does the borrower think? The borrower got a letter from NYCB saying servicing is transferred to Freedom. Freedom said the same letter, saying, we are now doing your servicing. The borrower understands there is only one servicer. That's consistent with Section 6G, with the purposes to alleviate confusion. That is consistent with all the other interpretations of the statute. That is Robinson compliant, because an interpretation of respect to the amounts received,  For this and all the reasons that I have argued previously, I respectfully request that this court find that the district court was wrong, reverse the district court, and find Freedom Mortgage is the servicer for all purposes after November 1, 2017. Thank you. We'll hear from Mr. Friedel now. Thank you. May it please the Court, Kevin Friedel for the Consumer Financial Protection Bureau. The Bureau's basic position in this case is that a transferee servicer that acquires all rights to service a consumer's mortgage loan and holds itself out to that consumer as his servicer is a servicer under RESPA with a responsibility under the statute to ensure timely payment of escrow account items, such as the property taxes at issue here. And for that reason, we think the district court's contrary holding should be reversed. I want to point the court in particular to two provisions of Section 6. First, there's the definition of servicer as the entity responsible for servicing. Now, we don't rely solely on this provision, but it's notable and certainly consistent with common usage and common sense that the company that owns the master servicing rights has ultimate control over how servicing of a consumer's loan is going to be carried out, would also have a responsibility to ensure the proper servicing of that loan under the statute. I also want to point the court to another part of Section 6. This is 2605C, the hello letter requirement, which requires a new servicer to send consumers a letter around the time of the transfer, setting out certain basic information, including the identity of the new servicer, the effective date of the transfer, where they can direct any questions about the servicing transfer. We think it would be a really implausible reading of the statute that the word servicer in 2605C would refer to something wholly different from the word servicer in 2605G, which requires a servicer to make timely payment of escrow account items. Far more sensible to read these provisions together so that the company that is required by law to tell the consumer where your new servicer also has a responsibility as a servicer to ensure payment of these items, and particularly in the context of a consumer protection statute, which was meant to help clarify for consumers what's going on during these transactions, which, of course, consumers are not themselves initiating. They don't choose to have a new servicer. Congress reasonably determined that they needed more information about what was going on when these rights are transferred. The district court erred in relying instead on the definition of servicing. That definition is a general description of what servicing is, but it doesn't necessarily control who is responsible for servicing, and it doesn't require that the entity that receives monies from a consumer must be the one to pay them out or they would have sole responsibility for paying them out later. That interpretation would conflict with the rest of Section 6, including 2605G, which requires that servicers pay escrow account items on time even when there's not enough money in a consumer's escrow account. So this requirement is elaborated on in Regulation X, which says as long as the consumer is current on their loan, the servicer is responsible for paying this money even if there's not enough in the escrow account. So under the law, not only does it not matter when a consumer paid particular monies into an escrow account, to some extent it doesn't even matter whether they paid in enough. The servicer is responsible for taking care of these obligations, and then the Reg sets out a process by which the servicer can recoup that shortfall from the consumer in a lump sum or installments. I also wanted to address Freedom's somewhat different argument that they made in the District Court, which had nothing to do with the definition of servicing. It basically said, just look to the contract and who had responsibility under the contract, that's the sole servicer. That interpretation, we strongly urge the Court not to endorse that view, which is really completely contradictory of the statutory scheme here, because it would mean that for a consumer to identify and hold accountable their servicer for servicing fails, they would have to, servicing failures, excuse me, they would have to unmask the true servicer by defining the existence of these side agreements to which, of course, consumers. Yes, Your Honor. Counsel, on that point, as I read the loan agreement here, it doesn't require anyone to make payments, tax payments out of the escrow account. It simply refers to RESPA. So I guess I don't understand that argument, perhaps, because the statute or the loan agreement doesn't require any servicer to make tax payments. It just references RESPA. They must do what RESPA requires. So I don't see how the loan agreement requires any payments out of the escrow account. Am I missing something? Well, we don't think, are you referring to the transfer agreement between the servicers? No, no, I mean the actual loan agreement. So page 172, 173, the actual loan agreement, it requires the borrower to make payments into the escrow account, but it doesn't require the servicer to make payments from the escrow account. It merely refers to RESPA. So there's not a loan obligation to make tax payments. There's only a loan obligation to make escrow payments. You are correct that the loan agreement does require the borrower to make payments into escrow for specified items, including property taxes. 2605G says that where a federally related mortgage loan requires such payments, then the servicer has to pay out of the escrow account for those items on time. But that's a statutory obligation, not a contractual obligation on the servicer. Is that in your understanding? It is a statutory obligation, yes, that is triggered by the fact that Mr. Harrell was required to pay into escrow for these amounts, yes. I see that I'm over my time. I'm happy to address any other questions the court may have, including the question of why NYCB is not a necessary party here. I don't have any other questions to Judge Richardson or Judge Bell. No, thank you. Ms. Watterson. Good morning. I'd like to address the necessary party issue first. And although I agree with my friend on the other side that this court doesn't need to reach the necessary party issue or be concerned about it, I think I have another path to get there. While Rule 19 deals with concerns and considerations about potential impact on a non-party, and while this court may, sua sponte, address this question in certain circumstances, here we have a situation where those concerns and considerations were addressed in another related matter. Chittick, in the district court, a case that's virtually identical, that names both NYCB and Freedom as parties, and I'll give the court the docket number if the court doesn't mind me going slightly off the record into the public record because it directly answers this court's question. And that docket number is 18-1034. And in that case, after the district court entered its original decision recommending dismissal before the reconsideration motion, the judge in Chittick put in place on the party's motion, and there it was Freedom's motion, a stay, saying that the Carroll case will be heading to the Fourth Circuit, the Fourth Circuit will be deciding this issue. But here's what's most telling. After the court had the reconsideration motion before it, not only did Freedom move for a stay, because I understand the court's concerns here when it comes to the necessary party in Rule 19 issue, very well may be the interests of NYCB. NYCB affirmatively moved for a stay in Chittick. Again, a case, same type of putative class, against both NYCB and Freedom in that case. And at docket number 36 in that case, actually 35 is the motion, 36 is the memorandum, NYCB moves for a stay. It adopts the reasoning set forth in Freedom's motion. And it notes that the court had previously stayed the matter based on a finding that the court's ruling in Harrell, meaning this court's ruling in Harrell, may be dispositive or some or all of the issues presented in this appeal. And NYCB went on to say all of these same considerations continue to apply, and in the interest of judicial economy, consistency, and the like, please stay the Chittick action. The district court did stay the Chittick action on that basis. So here we have a circumstance where, and we don't have to get into, Your Honor, whether or not NYCB raised its hand and made a claim to an interest. NYCB did affirmatively speak and say fully recognizing that this court's decision in this appeal would impact the question of who is the servicer with respect to the November 15th tax payment, and said that's fine with them. So if it gives the court any comfort, and again, I don't use the word comfort lightly, that the considerations that are at play in a Rule 19 inquiry, and that is possible impact on a non-party, that is NYCB. NYCB has stated its piece when it comes to this issue. Thank you. Counsel, can I turn you to the question that we were talking with your colleague from the CFPB about, does the servicer's obligation, in your view, arise under the contract, that is the loan agreement, or does it arise under RESPA? So the obligation of the servicer to make tax payments, is that a contractual obligation, or is that a statutory obligation? Your Honor, I think I need to say, without researching this specific question, and I think it's a good one, I think we must say it arises out of both. I mean, plainly there is a contractual relationship between lender and borrower, but this is a lender-borrower relationship that is governed by RESPA. And the contract, I mean, and I'm not trying to catch you off guard, and you can just say, I don't know, that's totally fine. But as I read the loan agreement, it requires contractually the borrower to make payments into escrow, but it does not require the servicer to make payments from the escrow. The payments from escrow are referred to as the RESPA obligation. So that's statutory, not contractual. And to just sort of give the reason why this matters, under the servicing definition, the making of payments under I-3 only applies to those that are required pursuant to the terms of the loan. And so if the payments aren't required to be made by the terms of the loan, but instead by statute, that provision wouldn't seem to apply. Did you follow that? That was a little quick. I am following that, Your Honor. And I would have to, as an appellate lawyer, I'm always going to be very candid with the appellate court. I have never looked at it quite that way. And I think right now the best that I can say, I wish I had a more satisfactory answer to the question, just one that more directly answers the question. But I think that we've got to look both to the contract and the statute. And if the court would like the parties to speak on that issue, I certainly will do that. Ms. Watterson, well, speaking of the statute then, where in RESPA does it reference the type of split responsibility that the district court found here? I think the split responsibility is found, and in particular, we have a very narrow question in this case. Against whom does the cause of action lie with respect to the November 15th payment under the circumstances of this case? And as my friend Mr. Harrell pointed out, and I wanted to note when he was talking, he said, you know, when NYCB gets the money, again, looking at the statutory language, receiving any scheduled periodic payment from the borrower. He said an obligation arises. And then that very same provision talks about paying those amounts received from the borrower. I don't see a distinction, as Mr. Harrell does, there isn't one between receiving scheduled payments and then amounts received from the borrower. What you receive from the borrower are the periodic scheduled payments. And then it says that those payments must be made, the amounts due, must be paid from the amounts received in escrow. And in this case, we have circumstances where the amounts that were escrowed for the real estate tax payments were made to NYCB, and these are allegations in the complaint, not facts outside the complaint. And as Mr. Harrell also alleges, at all relevant times, including on October 31st, November 1st, November 2nd, November 3rd, all monies needed to pay the November tax bill, which everyone knew needed to be paid on or before November 15th, had been paid. Under those circumstances, NYCB has the obligation to make that tax payment. We are not advocating a circumstance, Your Honor, where there's two servicers for all. Excuse me. So is there any case law support for this sort of split responsibility notion? Your Honor, I looked and looked and have tasked other folks with looking. This is one of those circumstances where I'm not able to stand in front of a court and point you to a specific decision that addresses this question. I think, as you can see, the reason why the parties, certainly on my end and perhaps on the other end as well, are focusing so much on the statutory language, because that's what we have and that may be all that we have here. The language of RESPA, both in terms of the definition of servicer and servicing, as well as the provision on which Mr. Harrell asserts his cause of action, 2605G. And as, you know, the district court, and again, I want to come back to, and the reason why I underscored under the circumstances of this case, both Mr. Harrell and the CFPB throughout their brief talk about facts and circumstances that do not relate to these facts and circumstances. And there's nothing in the district court's opinion that would prevent the court  to have, I think the term was used, split servicing or two servicers. We're focusing on, and the district court focused only on, who is the servicer with respect to the November 15th tax payment. Counsel, can you respond to the argument in other places, like the hello letter and otherwise, where it is suggestive that the transition occurs at a given point, and therefore the acquiring servicer, in this case Freedom, acquired and sent the letter saying, hello, I'm now your servicer, acquired the responsibility of receiving all payments going forward and making all, receiving payments and making payments on a going forward basis. Why shouldn't we read that context, as your colleague from the CFPB suggested, as strongly indicating a contrary reading to the district court's view? Your Honor, I actually have flagged those pages, and I read them somewhat differently, and they are not at all inconsistent with the district court's ruling. They talk about, you know, after this date, Freedom will be collecting your mortgage payments. Nothing else about your loan has changed. It also points out and tells the borrower, or reminds the borrower, presumably they knew who their prior servicer was, that NYCB is now collecting your payments, then talks about what will happen going forward. And again, there's those other things. But you agree that November 15 is after that date. I mean, that's where I have trouble, right? So, like, it is receiving and making payments all happens after the date in the hello letter. And so I'm just having trouble understanding why that doesn't suggest to us that since you are the person responsible for both receiving and making as of November 2, that you are not the sole servicer at that juncture, based on the context that we're getting from the other provisions. Your Honor, I focus again on the temporal point and the allegations in the complaint. During the period of time that NYCB was the servicer, NYCB had collected all of the money. This is not a circumstance where only part of the money for the real estate tax payment in November. All of that had been collected. NYCB was aware, as the district court put it, there was a then due, and this is prior to November 1st, a then due tax bill, knew that it needed to be paid on November 15th. As a matter of fact, paid the June payment on June 1st as opposed to June 15th. And it was the servicer who had the obligation to make that tax payment. And this isn't a circumstance where the plaintiff is going to be left without a cause of action. It is simply which servicer needs to pay. Let me say up front, before I make this point, that I am not relying on the PAA to define the party's obligations under the statute. That's an entirely separate point. But my friends from both Mr. Harrell and the CFPB have raised provisions in the PAA to support their arguments. Let me point out that the PAA demonstrates that the servicers involved in this transaction understood what the RESPA provides in terms of obligations under the statute, obligations under which NYCB would have the obligation to pay the November tax bill, for which it already had the bill, had collected all of the monies in hand. It needed to make the then-due tax bill. Is that the PAA provides specifically for the payment by NYCB of all payments? Judge Bell has a question, I believe. Under your reading of the statute, aren't you saying that there are simultaneously two entities doing things that would fit within the definition of servicer? Your Honor, that is correct. So if that's the case, if you have two entities performing functions that fit the description of servicer, don't you necessarily then have to say that the statute allows for more than one servicer? I believe it does, Your Honor. It allows for more than one servicer to the extent that NYC freedom became the servicer. NYCB has servicing obligations that it needs to fulfill with respect to the November 15th tax bill. So under your reading, there can be more than one servicer, maybe three, four, five for all the facts might allow. I think, Your Honor, I'd have to say that that is correct, because they're asking the servicer, NYCB needs to finish the job for an already accrued, ripened obligation that it has under RESPA. And there is no harm to borrowers in these circumstances. We're not suggesting that the borrower doesn't have a cause of action against any servicer. I mean, we're not arguing that the real estate taxes did not need to be paid. But instead, under these circumstances, that is an obligation that falls on NYCB. And the cause of action for the failure to pay those taxes by the end of the calendar year fall on NYCB. Your colleague mentioned earlier, in the context of the Rule 19 inquiry, that if the plaintiff recovers against Freedom, that Freedom would have a claim under the PAA against NYCB. Is that your understanding of how that would work? Were that to come to pass? That is correct, Your Honor. The PAA speaks specifically to, and I'm not quoting verbatim, so I don't have to look down at my notes, but the PAA provides, again, and puts the obligation plainly on NYCB to do what I'm going to call, or called in our brief, finish the job. And that is to make tax payments that needed to be made, or perhaps insurance premium payments, out of the escrow funds it had collected from the borrower, amounts received from the borrower. And they had the obligation to do that for all that would be due within 30 days of the effective date of the transfer. And then recognizing that that is NYCB's obligation, there's also an indemnification provision, such that if Freedom is sued or incurs liability as a result of NYCB's failure to do its job, or to finish the job, there's an indemnification provision. Correct. And again, before I close and ask this Court to affirm, I emphasized at the beginning, about under the circumstances of this case, this is a case where the Court concluded, again, looking at all of the facts pleaded in the complaint, that concluding that Freedom is not the servicer for the purposes of the November 15th tax payment aligns with the statute. Instead, NYCB needed to pay the monies then due. And Judge Bell, I'm not suggesting that Freedom is not a servicer, perhaps at that same time. Mr. Harrell would retain a cause of action against someone under these circumstances. And this is not contrary to the language of the statute. And many of the, what I'm going to call, parade of horribles addressed in the brief are cases that are not like this one. Thank you. I see my time is up. Thank you. Mr. Harrell, you have three minutes in rebuttal. Okay, so there is a lot going on here that is distracting from the actual words that we need to look at, the Court needs to look at. Let's go back to the statute. Let's go back to 6G, the actual provision that Harrell alleges Freedom violated. The servicer shall make payments from the escrow account for such taxes, insurance payments, and other charges in a timely manner as such payments become due. When do the payments become due? November 15, 2017. That is when the payments become due. We heard Freedom mention that the payments were then due. This is not this case. I think everybody in this Court, everybody here understands that there are situations where you may have received a bill. I mean, typically these come from doctors. You get a bill, you open it up, and it says payment is due on receipt. And I personally get annoyed by these because this means I'm already late as I'm opening the envelope. It's due on receipt, I'm already late. That is not this bill. This bill is due on November 15, 2017. It was not then due. The statute says in a timely manner as such payments become due, as they become due on November 15, 2017. The only question that we have to answer is, who is the servicer on November 15, 2017? And we have the answer. Freedom, in its response brief, said the following on page 19. To be sure, after the effective date of transfer, Herald was required to make payments to Freedom for deposit into escrow, and Freedom was obligated to make payments out of escrow in a timely manner for taxes. None of that is disputed, says Freedom Mortgage Corporation. That is all we need to worry about. Can I ask the question I asked your two colleagues about whether you believe that the servicer's obligation to make tax payments from the escrow account, does that arise under the loan agreement, or does it arise under the statute, the RESPA statutory structure? Your Honor, the security instrument specifically requires the borrower, Herald, to make payments to the servicer for the payment of taxes, for putting into an escrow account for the payment of taxes. Now, as to whether there's an actual directive in the security instrument to make the payment of taxes, I think that's probably implied. It certainly exists in the statute. If it's not clear in the security instrument, it's very clear in the statute. Your Honor, I would just say that this parade of horribles is real. This is not just going to apply to a party that has paid 100 percent of the payments to the prior servicer. This will happen to virtually every situation where there is a transfer of servicing. In virtually every situation, there will be two servicers. This cannot stand. It is not compliant with RESPA. It is confusing to the borrower. It is confusing to me as the borrower. I respectfully request this court reject the district court's ruling, reverse, and find that Freedom is the servicer for all purposes after November 1, 2017. Thank you. All right. Thank you. And as I'm sure you all know, if we were actually in Richmond arguing, the court would now come down from the bench and greet counsel. Even though we are at a distance, consider yourself warmly greeted, and we thank you for your able arguments, particularly in the face of some technical difficulties today. And a special shout-out and thanks to our IT person, Mike Dean, who makes this all possible. So we appreciate your arguments, and we'll take a brief recess. This Honorable Court will take a recess.
judges: Stephanie D. Thacker, Julius N. Richardson, Kenneth D. Bell